Argued and submitted September 19, 1983,
reversed and remanded September 12, 1984

OLLISON,
*Appellant,*

*v.*

WEINBERG RACING ASSOCIATION, INC. et al,
*Respondents.*

NICHOLS,
*Appellant,*

*v.*

WEINBERG RACING ASSOCIATION, INC. et al,
*Respondents.*

(A8201-00435 & A8201-00436; CA A26274)

688 P2d 847

Gregory Kafoury, Portland, argued the cause for appellants. With him on the briefs was Kafoury & Hagen, Portland.

Lisa C. Brown, Portland, argued the cause for respondent Weinberg Racing Association, Inc. With her on the brief was Black, Tremaine, Higgins, Lankton & Krieger, Portland.

James K. Belknap, Portland, argued the cause and filed the brief for respondent Oregon Concession Service, Inc.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs appeal judgments entered after their respective complaints were dismissed under ORCP 21A(8) for failure to state a claim. The cases have been consolidated for appeal. We reverse and remand.

The allegations of negligence in the complaints are identical. Plaintiffs allege that they were patrons of the Portland Meadows Race Course on January 23, 1980, which was "Fan Appreciation Night," when beer was sold on the premises for less than half the usual price. A patron, Thurman, fired a gun, causing a stampede of other patrons in which plaintiffs were knocked to the ground, trampled and injured. With respect to defendant Weinberg Racing Association, Inc. (Weinberg), which operates Portland Meadows Race Track, plaintiffs allege that their injuries were

"* * * caused by defendant Weinberg's negligence in one or more of the following particulars:

"1) In failing to exercise reasonable care to protect its patrons from harmful acts of third parties when it knew or had reason to know of the likelihood of such acts based on past experience;

"2) In failing to exercise due diligence to discover that acts harmful to its patrons were being done or were about to be done by third parties when it knew or had reason to know of the likelihood of such acts;

"3) In failing to exercise reasonable care to protect its patrons from harmful acts of third parties when it should reasonably have anticipated the likelihood of such acts based on the character of its business as a race track;

"4) In failing to exercise reasonable care to protect its patrons from harmful acts of third parties when it should reasonably have anticipated the likelihood of such acts based upon the fact that beer was available for consumption on the premises by patrons for less than half the usual price;

"5) In failing to provide adequate security personnel to police its premises when it knew or had reason to know of the likelihood of such acts as described above."

To state a cause of action in negligence, a plaintiff must allege that the defendant owed a duty of care, that defendant breached that duty and that the breach was the

cause in fact of some legally cognizable damage to the plaintiffs. *Brennen v. City of Eugene,* 285 Or 401, 591 P2d 719 (1979). In evaluating a Rule 21A(8) dismissal, we take as true the allegations of the complaint and "any facts which might conceivably be adduced as proof of such allegations." *See Brennen v. City of Eugene, supra,* 285 Or at 405; *see also Mezyk v. National Repossessions,* 241 Or 333, 339, 405 P2d 840 (1965).

■ Weinberg concedes that it owes a duty to its patrons to exercise reasonable care to protect them from injury by other patrons. However, it argues that that duty does not extend to the provision of security personnel and that it does not extend to protection from injury under the allegedly highly unusual and unforeseeable circumstances alleged here. "Duty" is "an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.'" *Mezyk v. National Repossessions, supra,* 241 Or at 336, quoting Prosser, Law of Torts, § 333 (3rd ed 1964). Ordinarily an individual is under no duty to protect another from the criminal acts of a third party. However, Oregon appellate courts have applied the standard expressed in § 344 of the Restatement (Second) Torts:

> "A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
>
> "(a) discover that such acts are being done or are likely to be done, or
>
> "(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

*Brown v. J. C. Penney Co.,* 297 Or 695, 688 P2d 811 (1984); *Uihlein v. Albertson's, Inc.,* 282 Or 631, 580 P2d 1014 (1978); *Torres v. United States Nat. Bank,* 65 Or App 207, 670 P2d 230, *rev den* 296 Or 237 (1983). These cases also approve comment *f* of that Restatement section, which states that the possessor must have some kind of notice before a duty to provide security personnel arises:

> "*f. Duty to police premises.* Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to

exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection."

In support of its contention that it had no duty to provide security, Weinberg cites *Uihlein v. Albertson's, Inc., supra,* in which the plaintiff was assaulted in the defendant's supermarket by an unknown person. The court affirmed a summary judgment for the defendant, finding that it was not negligent in failing to provide security inside the store. The court applied Restatement (Second) Torts, § 344, and held that evidence that assaults were likely to be committed *in the vicinity of* the store did not put the defendant on notice of the likelihood of harmful acts *inside* the store.

Weinberg also cites *Rosensteil v. Lisdas,* 253 Or 625, 456 P2d 61 (1969), in which the Supreme Court found that the duty to provide security did not extend to a situation in which the plaintiff was injured in the defendant's all-night restaurant when a group of brawling men ran into the restaurant from outside. The court emphasized that, even though there had been previous incidents which "swept in from the streets," it was unreasonable to find that defendants should have anticipated that "outsiders [would] elect to use the restaurant rather than the street as their battleground." 253 Or at 630. In *Gross v. Wiley,* 231 Or 421, 373 P2d 421 (1962), the plaintiff was kicked by a patron outside a public dance hall. The court applied a standard expressed in a Restatement section which has now been superseded by § 344 and found that there was no evidence that defendants should have anticipated the incident and no evidence regarding the adequacy of security at particular times or locations.

■ We do not consider those cases to be in point here. Plaintiffs allege that, on the basis of past experience, Weinberg knew or had reason to know of the likelihood of such harmful acts by third parties. We conclude that plaintiffs could conceivably prove facts to demonstrate notice sufficient under the standard of § 344.

■ Weinberg argues that plaintiffs did not plead *facts* showing that it was on notice of the likelihood of a third party's intentional criminal acts. Its criticism, even if well taken, does not provide a ground for an ORCP 21A(8) motion to dismiss. If it wanted more specific information regarding the factual basis of plaintiffs' case, other procedures (such as discovery or an appropriate motion) were available.

■ In order for a defendant to be subject to liability for negligence, the breach of duty must cause foreseeable harm. Weinberg argues that plaintiffs' injuries were unforeseeable as a matter of law. It contends that it is not the insurer of the safety of its patrons and cannot be expected to anticipate "unusual crowd movements resulting from a highly unusual act of a patron." The determination of when harm is caused by such highly unusual circumstances that it is not actionable was discussed in *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 609-10, 469 P2d 783 (1970):

"1. * * * Foreseeability is an element of fault; the community deems a person to be at fault only when the injury caused by him is one which could have been anticipated because there was a reasonable likelihood that it could happen.

"2. Thus fault, as the term is usually understood, is not associated with conduct which causes harm through the concatenation of highly unusual circumstances. If, in our appraisal of the community's conception of fault, we find that the conduct in question clearly falls outside the conception, we are charged with the duty of withdrawing the issue from the jury.

"3. The specific question before us is, then, whether plaintiff's injury and the manner of its occurrence was so highly unusual that we can say as a matter of law that a reasonable man, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur. Stated in another way, the question is whether the circumstances are out of the

range within which a jury could determine that the injury was reasonably foreseeable." (Footnotes omitted.)

■ Weinberg stresses that it should not have been expected to anticipate that a patron would shoot a gun and thus cause a stampede. However, it is not necessary that the exact manner of harm should be foreseen; the question is whether the harm is of the general kind to be anticipated from the conduct. *See, e.g., Connolly v. Bressler,* 283 Or 265, 583 P2d 540 (1978); *see also Whelchel v. Strangways,* 275 Or 297, 306, 550 P2d 1228 (1976).

*Connolly* provides a good illustration of an unusual but legally "foreseeable" manner of injury. In that case five young men went hunting in the defendant's uncle's truck and got drunk. When they returned, the defendant entrusted the truck to Wilt, one of the five, who was intoxicated. Wilt left the truck outside a tavern with the keys in the ignition. Mike, another of the five, who had passed out in the back seat, came to but could not convince Wilt to leave the tavern and take him home. When Mike started to drive the truck away, his brother, the plaintiff, who did not want him driving while drunk, jumped in the bed of the truck and started pounding on the cab, yelling for Mike to stop. The plaintiff was injured when the truck overturned. The Supreme Court said:

> "* * * If a vehicle is turned over to one of a bunch of drunken youths for their use, the likelihood of a wreck and resultant injuries is sufficiently probable to be 'foreseeable.' The bizarre manner of the occurrence does not prevent the accident from falling into the general category of risk reasonably to be anticipated. * * *" 283 Or at 268.

■ Here, plaintiffs allege that, because of past experience, Weinberg had reason to know of the likelihood of dangerous conduct by its patrons when alcohol was being sold at a greatly reduced price. The imagination is at a loss to conceive of *every* possible drunken stunt that could cause injury in a crowd. Yet a jury could find it foreseeable that some patron's misbehavior could cause a disturbance resulting in rapid crowd movement that could result in injury to bystanders. We conclude that, under the allegations of plaintiffs' complaint, they could conceivably have adduced evidence from which a jury could determine the injuries were reasonably foreseeable.

■ Weinberg also argues that plaintiffs did not specify what act or omissions created a likelihood of harm to plaintiffs. However, the complaint specifies that Weinberg was negligent in one or more alternate ways, including failing to provide adequate security personnel and failing to "exercise reasonable care to protect its patrons." The allegation of failure to provide adequate security is very specific. As stated above, if Weinberg wanted additional specificity, an ORCP 21A(8) motion to dismiss is not the proper means to get it.

■ Finally, citing *Stewart v. Jefferson Plywood Co.,* *supra,* Weinberg contends that plaintiffs' complaint fails to allege facts that establish that defendant's conduct was a substantial factor in causing plaintiffs' injuries. Although it is possible that evidence would not establish that additional security personnel could have prevented plaintiffs' injuries, we cannot say that plaintiffs could not adduce evidence that lack of adequate security was a substantial factor. We conclude that plaintiffs' complaints should not have been dismissed for failure to state a claim against Weinberg.

We next consider the allegations as to defendant Oregon Concession Services, Inc. (Concession Services). The core of plaintiffs' allegations is:

> "Defendant Oregon Concession Services, Inc. was negligent in providing patron Harry Thurman alcoholic beverages when Thurman was visibly intoxicated, which negligence caused injury to plaintiff[s]."

Plaintiffs premise their claim in part on common law negligence. In *Campbell v. Carpenter,* 279 Or 237, 566 P2d 893 (1977), the Supreme Court recognized a common law cause of action for negligence against a tavern owner for injuries to third parties caused by a person who had been served at the tavern while visibly intoxicated. In that wrongful death action, the decedents were killed by an automobile whose driver had been served in the owner's tavern. The court said:

> "* * * [A] tavern keeper is negligent if, at the time of serving drinks to a customer, that customer is 'visibly' intoxicated because at that time it is reasonably foreseeable that when such a customer leaves the tavern he or she will drive an automobile. * * *" 279 Or at 243-44.

*See also Miller v. City of Portland,* 288 Or 271, 604 P2d 1261 (1980).

Concession Services seeks to distinguish *Campbell* on the ground that, unlike the injury caused by the patron in *Campbell,* who drove away from the tavern in a motor vehicle, the injury caused by the patron Thurman was not foreseeable. We are not aware of an Oregon case upholding a cause of action for negligence in serving a visibly intoxicated person who causes injuries to a third party by any means other than a motor vehicle. We must thus consider whether the common law negligence cause of action may be extended to other situations.

In *Campbell,* the court approved the reasoning of the New Jersey Supreme Court in *Rappaport v. Nichols,* 31 NJ 188, 201, 156 A2d 1 (1959):

> "* * * [N]egligence may consist in the creation of a situation which involves unreasonable risk because of the expectable action of another. * * * Where a tavern keeper sells alcoholic beverages to a person who is visibly intoxicated or to a person he knows or should know from the circumstances to be a minor, he ought to recognize and foresee the unreasonable risk of harm to others through action of the intoxicated person or the minor. * * *"

The foreseeability inquiry is the same here as in other negligence actions. We agree with Concession Services that the peculiar circumstances of this incident may not have been foreseeable to the server of alcohol. However, as we stated with respect to the cause of action against Weinberg, it is not necessary that the exact manner of harm be foreseeable. As the Supreme Court noted in *Stewart v. Jefferson Plywood Co., supra,* 255 Or at 610, the determination of foreseeability depends on how the harm is described. A very generalized description of harm may result in a conclusion that the harm was inevitable, but a very specific mechanistic description of the harm may result in a conclusion that no one could have foreseen that particular harm. We consider a specific description of the harm in a case like this to be inappropriate, because it is in the nature of alcohol to make more likely a wide range of disruptive behavior one might not be required to expect of a sober person. Thus, we conclude that, under the allegations of their complaint, plaintiffs could have adduced evidence from which a reasonable jury could find it foreseeable that an intoxicated racetrack patron served would use a weapon or

otherwise cause a disturbance in the crowd, injuring bystanders. *See Nazareno v. Urie,* 638 P2d 671 (Alaska 1981).[1]

 Under *Campbell,* plaintiffs must show that Concession Services' negligence was a "substantial factor" in their injuries. Concession Services argues that plaintiffs failed to allege that the beer consumed caused Thurman's actions. This allegation is implied in plaintiffs' statement that the negligence in serving Thurman caused plaintiffs' injuries. Concession Services also argues that his actions were a "superseding cause" of plaintiffs' injuries, relieving it of any liability. The analysis in *Campbell* refutes that argument.

Reversed and remanded.

---

[1] In that case the Alaska Supreme Court found that a negligence *per se* instruction should have been given in an action by a dance hall patron injured when another patron, who had been served alcohol while intoxicated, fell against her. Before reaching the negligence *per se* issue, however, the court concluded that "there is a general common law duty, independent of statute, requiring vendors to conduct themselves with reasonable care and prudence when dispensing alcohol." 638 P2d at 674, citing numerous cases.